UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

TRACY LEE o/b/o, :
R.C.L., a minor, :
  :
    Plaintiff : No. 4:11-CV-2154
  :
v. : (Judge Nealon)
  :
CAROLYN W. COLVIN, :
ACTING COMMISSIONER OF SOCIAL :
SECURITY, :
  :
    Defendant :

FILED
SCRANTON
MAY 20 2013
PER _____
DEPUTY CLERK

## MEMORANDUM

### Background

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g), wherein the Plaintiff, R.C.L., is seeking review of the decision of the Commissioner of Social Security ("Commissioner") which denied his claim for child's supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (Act), 42 U.S.C. §§ 1381-1383f. To be entitled to child SSI benefits, the applicant must establish that he was disabled prior to turning 18 years of age as the result of a physical or mental impairment, that the impairment resulted in marked and severe functional limitations, and that the impairment was expected to result in death or had lasted or was expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(I).

Plaintiff, through his mother, protectively filed an application for child SSI on December 30, 2008, alleging disability since November 15, 2001, due to an anxiety disorder. (Tr. 78-81,

133). Plaintiff was born on September 11, 1996, and was considered an "adolescent"[1] on the application date and at the time of the ALJ's decision. 20 C.F.R. § 416.926a(g)(2); (Tr. 10, 13).

Plaintiff's claim for SSI was initially denied by the Social Security Administration on May 28, 2009. (Tr. 64). Plaintiff requested a hearing before an administrative law judge. (Tr. 68). A hearing was held before administrative law judge Sridhar Boini on August 26, 2010. (Tr. 37-62). On September 17, 2010, the administrative law judge issued a decision denying Plaintiff's claim for child SSI benefits. (Tr. 10-24). On November 5, 2010, Plaintiff filed a request for review of the decision with the Appeals Council of the Social Security Administration. (Tr. 6). On September 21, 2011, the Appeals Council concluded that there was no basis upon which to grant Plaintiff's request for review. (Tr. 2-5). Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

On November 17, 2011, Plaintiff filed a complaint in this Court. (Doc. 1). The Commissioner filed an answer to the complaint and a copy of the administrative record on February 14, 2012. (Docs. 8, 9). Plaintiff filed his brief on March 30, 2012 and the Commissioner filed its brief on April 30, 2012. (Docs. 11, 12). The matter is ripe for disposition.

**Standard of Review**

When considering a social security appeal, the Court has plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir.

---

[1] The Social Security regulations state that a person age 12 to attainment of age 18 is classified as an "adolescent." 20 C.F.R. § 416.926a(g)(2).

1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, the Court's review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. § 405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-07. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

A three-step evaluation process is used to determine if a child claimant is disabled. 20 C.F.R. § 416.924. The first step of the process requires the claimant to establish that he has not engaged in substantial gainful activity. If a claimant has been doing substantial gainful activity, the Commissioner will determine that he is not disabled and will not review the claim further. If the claimant is not doing substantial gainful activity, the Commissioner will determine, at step two, if the claimant has a physical or mental impairment(s) or combination of impairments that is severe. If the impairment(s) is not severe, the Commissioner will determine that the claimant is not disabled and will not review the claim further. If the impairment(s) is severe, the Commissioner will then proceed to step three and determine if the claimant has an impairment(s) that meets, medically equals, or functionally equals the listings. To "functionally equal" a listing, the impairment(s) must be "of listing-level severity; i.e., it must result in 'marked' limitations in

two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). There are six domains of functioning: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) ability to care for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A "marked" limitation exists when the impairment interferes seriously with the child's ability to independently initiate, sustain, or complete activities in the domain in an age-appropriate manner. An "extreme" limitation exists when the impairment interferes very seriously with domain activities. 20 C.F.R. §§ 416.926a(b)(1)(i)-(vi), 416.926a(e)(3). If the Commissioner finds that the claimant has such an impairment(s), and it meets the duration requirement, the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.924(a).

In the present case, the ALJ proceeded through each step of the sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. 10-24). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 5, 2008, the application date. (Tr. 13). At step two, the ALJ found that Plaintiff's attention deficit hyperactivity disorder ("ADHD") and anxiety were severe impairments. (Tr. 13). At step three, the ALJ determined that Plaintiff's impairments did not meet, medically equal, or functionally equal the criteria of any listed impairment in Appendix 1, Subpart P. (Tr. 13-18). Specifically, he found that Plaintiff has no limitation in acquiring and using information, less than marked limitation in attending and completing tasks, no limitation in interacting and relating to others, no limitation in moving about and manipulating objects, less than marked limitation in caring for himself, and less than marked limitation in health and physical well-being. (Tr. 18-23). Thus, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr.

5

23-24). 20 C.F.R. § 416.924(a).

## Discussion

Plaintiff argues that substantial evidence supports a finding that he is disabled. (Doc. 11, pgs. 6-11). Plaintiff states that four psychiatrists determined that he had Global Assessment of Functioning ("GAF") scores under 50 or that he had marked limitations in at least two domains of functioning. (Doc. 11, pgs. 8-11). The Government argues that Plaintiff had no more than one, if any, marked limitations in the six areas of functioning, and therefore he did not meet the criteria for a finding of disability. (Doc. 12).

Plaintiff treated at Northeast Counseling Services. (Tr. 292-344). Ron Gavlick, M.A., treated Plaintiff on several occasions. (Tr. 293-309). In January 2006, Dr. Gavlick diagnosed anxiety disorder, NOS; disruptive behavior disorder, NOS; obsessive compulsive disorder, in full remission; academic problems; psychosocial stressors; and assessed GAF scores of 52 and 55.[2] (Tr. 298-303). He recommended mobile therapy and therapeutic support staff services. (Tr. 298-303).

Paul Termini, M.D., a board certified child and adolescent psychiatrist, examined Plaintiff on January 3, 2007. (Tr. 186-91). He noted that Plaintiff witnessed his mother's boyfriend being stabbed by his mother's ex-husband's girlfriend. (Tr. 186-88). Dr. Termini noted moderate psychosocial and environmental stressors, assessed a GAF score of 45[3] and

---

[2] A GAF score between 51-60 indicates moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders, 4th edition, Text Revision (2000).

[3] A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. Diagnostic and Statistical Manual of Mental Disorders, 4th edition, Text Revision (2000).

stated that Plaintiff was unable to attend school at that time. (Tr. 191).

In October 2007, Dr. Gavlick diagnosed anxiety disorder, NOS; disruptive behavior disorder, NOS; parent/ child relational problem; academic problems; history of asthma; psychosocial stressors; and assessed a GAF score of 58. (Tr. 304-309).

In March 2008, Dr. Gavlick diagnosed anxiety disorder, NOS, in partial remission; disruptive behavior disorder, NOS, in partial remission; parent/ child relational problem; academic problem, in full remission; history of asthma; history of school refusal, family problems, and a GAF score of 70[4] was assessed. (Tr. 296).

On February 4, 2009, special education teacher Renee Pullard completed a Teacher Questionnaire. (Tr. 122-29). She noted that Plaintiff was frequently absent due to illness, he was behind in many assignments, he had anxiety and feelings of being overwhelmed, he was often very tired, he rarely ate lunch, and rarely asked for help when having trouble with an assignment. (Tr. 122, 127).

In March 2009, Plaintiff underwent a consultative psychological evaluation with Tiffany Griffiths, Psy.D. (Tr. 223-26). Dr. Griffiths noted that Plaintiff was alert and interactive and oriented in all spheres, his dress and hygiene were appropriate, and no abnormalities were noted. (Tr. 224). Plaintiff's language reception, articulation, and expression were age appropriate and no abnormalities were noted. (Tr. 224). He was receiving special education services for social and emotional support. (Tr. 224). Dr. Griffiths observed that Plaintiff was slow, which she

---

[4] A GAF score between 61-70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships. Diagnostic and Statistical Manual of Mental Disorders, 4th edition, Text Revision (2000).

attributed to his medication. (Tr. 224). She also noted that he was very fearful. (Tr. 225). Plaintiff had no difficulties with his attention span, remaining on task or following instruction. (Tr. 224-25). He was cooperative, his mood was neutral, affect was mood congruent and within normal limits, and he had poor tolerance for stress and poor coping mechanisms. (Tr. 225). Dr. Griffiths diagnosed posttraumatic stress disorder, anxiety disorder, NOS, parasomnia, NOS, asthma, academic difficulty, history of witnessing trauma, and a GAF score of 50 was assessed. (Tr. 225).

On March 21, 2009, Dr. Griffiths completed a medical/ psychological source statement of functional abilities. (Tr. 227-30). In the area of acquiring and using information, Dr. Griffiths noted that Plaintiff was in regular education classes but he received social/ emotional support. (Tr. 227). She found that Plaintiff had no symptoms in the area of attending and completing tasks, he was slow and fearful, and had no problems with attention. (Tr. 228). In the area of interacting and relating with others, Dr. Griffiths noted that Plaintiff had some friends but he did not initiate social activity because he is reserved, anxious and shy. (Tr. 228). Regarding moving about and manipulating objects, Plaintiff was somewhat slow, possibly due to his medication. (Tr. 229). Dr. Griffiths found that Plaintiff internalized his difficulties, he becomes anxious and avoidant, and had marked difficulty regulating his emotions. (Tr. 229). She found no problems with health and physical well-being. (Tr. 230).

Plaintiff treated at KidsPeace in 2009 and 2010 and was assessed GAF scores between 35-50. (Tr. 345-63). On March 2, 2009, Plaintiff was diagnosed with separation anxiety disorder, mood disorder, attention deficit hyperactivity disorder and sleep disorder; psychosocial stressors were severe; it was noted that there was parental separation, his biological father was

not readily available and he was relocated; a GAF score of 35[5] was assessed and it was noted that his highest GAF score was 50. (Tr. 349).

On April 9, 2009, Plaintiff was treated for severe mood deregulation and outbursts associated with severe sleep problems. (Tr. 345).

In April 2009, KidsPeace notes indicate that Plaintiff was doing "relatively well" and he reported trouble sleeping without Ambien. (Tr. 351).

On April 27, 2009, Plaintiff did not make good progress, he could not sleep with Seroquel, he was awake most of the night and could not get up in the morning, therefore he missed a lot of school. (Tr. 361).

In May 2009, very little improvement was noted. (Tr. 362).

On May 13, 2009, Plaintiff's pediatrician, Moiz Mohyuddin, M.D., completed a childhood medical/ psychological source statement of functional abilities. (Tr. 237-44). Dr. Mohyuddin determined that Plaintiff behaved age-appropriately in all areas of functioning, namely, acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for himself, and health and physical well-being. (Tr. 237-40). He also completed a medical source statement of claimant's ability to perform work-related physical activities and determined that Plaintiff had no limitations with standing and walking, sitting, pushing and pulling, postural activities, and other physical functions. (Tr. 241-42).

On May 27, 2009, Leo Potera, M.D., a state agency medical consultant, completed a

---

[5] A GAF score of 31-40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. Diagnostic and Statistical Manual of Mental Disorders, 4th edition, Text Revision (2000).

childhood disability evaluation form and diagnosed PTSD, anxiety disorder and exercise induced asthma. (Tr. 246-51). Dr. Potera found that Plaintiff had no limitations in the areas of acquiring and using information, interacting and relating with others, and moving about and manipulating objects. (Tr. 248-49). Dr. Potera found that Plaintiff had a marked limitation in the area of attending and completing tasks, and less than marked limitations in the areas of caring for himself and health and physical well-being. (Tr. 248-49).

In June 2009, it was reported that Plaintiff was sleeping very well with Ambien and his behavior had improved. (Tr. 358). In September 2009, Plaintiff was doing better generally, he continued to report sleep problems, his mother stated that his mood was irregular, he was snappy, very oppositional and defiant, he would not do his chores, and would not listen. (Tr. 352).

Plaintiff underwent a sleep study in September 2009 and it was "essentially normal." (Tr. 353, 364). However, it was noted that Plaintiff took Ambien before the study and slept well. (Tr. 353).

On October 16, 2009, Plaintiff had lack of interest in doing chores and lack of motivation to take care of himself. (Tr. 354). In November 2009, Plaintiff's mother reported that she was not happy with his behavior and he was more oppositional and defiant. (Tr. 355). Plaintiff continued to have trouble sleeping in December 2009 and January 2010. (Tr. 356-57).

On January 4, 2010, Plaintiff underwent a psychological evaluation with Sheila A. Barber, Ph.D. (Tr. 397-400). Dr. Barber diagnosed anxiety disorder, ADHD, asthma, problems with his primary support group, problems related to social environment and a GAF score of 54 was assessed. (Tr. 400). It was recommended that Plaintiff treat with a behavior specialist consultant and receive mobile therapy. (Tr. 400).

As stated, the ALJ found that Plaintiff had no limitation in acquiring and using information, less than marked limitation in attending and completing tasks, no limitation in interacting and relating to others, no limitation in moving about and manipulating objects, less than marked limitation in caring for himself, and less than marked limitation in health and physical well-being. (Tr. 18-23). The ALJ therefore found that Plaintiff did not meet the criteria for establishing childhood disability. However, the medical opinions establish that Plaintiff had marked limitations in two domains of functioning. Dr. Griffiths determined that Plaintiff has a marked limitation regulating his emotions and Dr. Potera determined that Plaintiff has a marked limitation in attending and completing tasks. (Tr. 229, 248).

Plaintiff argues that the medical opinions establish there are at least two domains where he would have a marked limitation in functioning. (Doc. 11, pgs. 8-10). As stated, in order to functionally equal a listing, there must be "'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). Dr. Griffiths, the consultative examiner, found that Plaintiff has a marked impairment in his ability to regulate moods. (Tr. 229). Dr. Potera, the state agency medical consultant, found that Plaintiff has a marked impairment in the ability to attend to and complete tasks. (Doc. 11, pg. 10) (Tr. 248). The ALJ acknowledged that Dr. Potera found that Plaintiff would have a marked impairment in attending to and completing tasks. (Tr. 19). However, the ALJ still found that Plaintiff has less than marked limitation in attending and completing tasks. (Tr. 19). When evaluating Plaintiff's ability to care for himself, the ALJ acknowledged Dr. Griffiths' opinion that Plaintiff had limitations in caring for himself. (Tr. 17, 22). The ALJ nevertheless found that Plaintiff has less than marked limitation in the ability to care for himself. (Tr. 22).

Two medial opinions found that Plaintiff would have a marked limitation in two domains of functioning. Therefore, Plaintiff would functionally equal the listings, which would result in a finding of disability. 20 C.F.R. §§ 416.924(d), 416.926a(d).

Plaintiff also argues that there are four opinions of record that gave him GAF scores of under 50. (Doc. 11, pgs. 8-9). The ALJ evaluated Plaintiff's GAF scores and noted that a GAF score by itself does not establish a functional limitation. (Tr. 17). Although a GAF score alone does not establish disability, other evidence in the record indicates that Plaintiff has functional limitations. See Joseph v. Astrue, 2012 WL 4459796, *6 (E.D. Pa. April 26, 2012) ("Although a claimant's GAF score does not have a direct correlation to the severity requirements,... GAF scores are used by mental clinicians and doctors to rate the social, occupational, and psychological functioning of adults") (internal citations omitted). Plaintiff was assessed GAF scores ranging from 35-50, indicating serious symptoms and major impairments in several areas. The ALJ acknowledged that GAF scores that constitute "serious impairment[s]" would preclude an individual from maintaining a job. (Tr. 17). However, the ALJ still found that Plaintiff was not disabled.

After review of the administrative record, the Court concludes that the decision of the Commissioner is not supported by substantial evidence. An appropriate order follows.

**Date: May 20, 2013**

_____
**United States District Judge**